UNITED STATES of America

v.

Joseph VENNERI, et al.

Crim. No. HM–82–00188.

United States District Court,
D. Maryland.

Dec. 20, 1991.

Joseph Venneri, pro se.

Christopher B. Mead, Asst. U.S. Atty., Baltimore, Md., for the U.S.

Anna Mary Culver, by special appearance for Marriott Corp.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

Nine years ago, this Court sentenced the petitioner, Joseph Venneri, to six months incarceration and two years probation, conditioned on his payment of $3,512.00 in restitution to a third party, Marriott Corp. ("Marriott"). Last year, by a writ of error *coram nobis*, this Court vacated the conviction as based upon an unconstitutional statute. Presently before the Court is the issue of whether this Court has jurisdiction to direct Marriott to repay the restitution to the petitioner.

## I. FACTUAL SUMMARY

In October, 1982, following a jury trial before this Court, the petitioner was convicted of three counts of mail fraud under 18 U.S.C. § 1341. The conviction stemmed from the petitioner's activities as a partner of the Strauss Glass Company ("Strauss"). Strauss served for several years as a subcontractor for Marriott hotel projects.

Between late autumn 1979 and early spring 1980, Strauss purchased a piano for Frederick M. Taylor, the project manager of a hotel that Marriott planned to construct near Tampa, Florida. During the purchase process, several invoices for the piano travelled through the U.S. mails.

Claiming that Strauss intended to bribe Taylor with the piano, the United States charged Venneri with three counts of mail fraud. Specifically, the government charged that Venneri intended to defraud Marriott of Taylor's honest performance of his duties, to defraud Marriott of money and other things of value, and to defraud potential competitors of the opportunity to compete for Marriott's business in connection with the Tampa hotel project.

After a jury trial, Venneri was adjudged guilty on all three counts of mail fraud by a general verdict. This Court sentenced Venneri to a term of imprisonment for six months, followed by two years of probation conditioned on the payment of $3,512.00 in restitution to Marriott and a $1,000.00 fine.[1] Venneri appealed to the Fourth Circuit, which affirmed his conviction, *United States v. Venneri*, 736 F.2d 995 (4th Cir. 1984), and petitioned for *certiorari* to the United States Supreme Court, which denied his petition. *Venneri v. United States*, 469 U.S. 1035, 105 S.Ct. 508, 83 L.Ed.2d 399 (1984).

Years later, in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the Supreme Court declared that 18 U.S.C. § 1341 did not protect against schemes to defraud persons of intangible rights, such as the right to honest government. *McNally*, 483 U.S. at 360, 107 S.Ct. at 2881. Following that decision, several individuals who had been convicted under that statute on similar grounds petitioned for writs of error *coram nobis*. Those writs were granted and the convictions were vacated. *See United States v. Shamy*, 886 F.2d 743 (4th Cir.1989), *United States v. Mandel*, 862 F.2d 1067 (4th Cir. 1988).

Venneri also petitioned for a writ of error *coram nobis*, which this Court granted in an Order dated September 6, 1990. By that Order, this Court vacated Venneri's conviction and ordered the government to repay his fine. Today, having heard from the interested parties at a hearing in open court, having carefully considered the materials submitted by those parties, and having conducted additional research on the issue, this Court will order Marriott to repay the restitution to Venneri.

---

1. The amount of restitution represented one-half of the price of the piano.

## II.  RESTITUTION

■ Although courts have no inherent power to impose payment of restitution, Congress has provided statutory authority to require restitution.  Presently, that authority comes from the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663, 3664.  Because the acts at issue in Venneri's conviction occurred before 1982, however, the authority of this Court to impose restitution came from the federal probation statute, 18 U.S.C. § 3651.  Section 3651 provided that, "while on probation and among the conditions thereof, the defendant ... may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had."

The statute makes clear that a court may require restitution only to the extent of the actual offense of conviction.  *United States v. Taylor*, 305 F.2d 183, 187 (4th Cir.1962); *see also Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (Victim and Witness Protection Act authorizes restitution only for losses caused by the offense of conviction).  This Court has vacated Venneri's conviction, leaving no 'offense for which conviction was had.'  "While there are no means available to compensate a person who has been imprisoned for violating a statute that is subsequently found constitutionally void ..., there is always a means for such a person to recoup his losses when the loss takes the form of a monetary fine."  *United States v. Lewis*, 342 F.Supp. 833, 836 (E.D.La.1972).  The interests of justice make it imperative that the petitioner receive a refund of his restitution.

## III.  JURISDICTION

Marriott argues that this Court lacks jurisdiction to order it to repay the money it received from Venneri in connection with the restitution order.  Although Venneri

2.  At this Court's request, Marriott entered a limited appearance at the hearing.

3.  Indeed, despite the laudable intentions of Congress to "insure that victims are given at least the rights now afforded routinely to the accused," 128 Cong.Rec. S11,434 (daily ed. Sept. 30, 1982) (statement of Sen. Heinz), the Victim

could bring a separate action in an attempt to recover the money, Marriott contends that it is not a party to this action and therefore not subject to this Court's jurisdiction.[2]

■ Marriott is correct that, despite this Court's grant of the writ of error *coram nobis*, this proceeding remains criminal in nature, *see, e.g., United States v. Mischler*, 787 F.2d 240, 241 n. 1 (7th Cir.1986) (noting that, although the writ of error *coram nobis* "was abolished in 1946 by the amendment of Fed.R.Civ.P. 60(b), it retains its vitality in criminal proceedings"), and that crime victims ordinarily are excluded from criminal proceedings.[3]  However, in this extraordinary case, in which the putative crime victim already has received payment of restitution ordered in connection with an unconstitutional conviction, this Court finds that the ends of justice require Marriott to restore the restitution to the petitioner.

In support of its position, Marriott cites *Herndon v. Superintendent, Virginia State Farm*, 351 F.Supp. 1356 (1972).  Having granted a *habeas corpus* petition and having vacated the associated conviction, the court in *Herndon* considered the issue whether it could order the State of Virginia to repay the fines paid by the petitioner in connection with the vacated conviction.  Characterizing the petitioner's request for a refund as a suit for recovery of money from the state, the court in *Herndon* held that the Eleventh Amendment barred the petitioner's recovery.  In this case, however, the provisions of the Eleventh Amendment do not apply.

On the other hand, Venneri cites *United States v. Lewis*, 478 F.2d 835 (5th Cir.1973), in support of his contention that this Court has jurisdiction over Marriott.  Faced with a conviction vacated by a writ of error *coram nobis*, the court in *Lewis* considered a request for a refund of fines paid in

and Witness Protection Act of 1982 still leaves victims with no role in the prosecutorial process.  18 U.S.C. §§ 3663, 3664; *see* Note, Restitution in the Criminal Process: Procedures for Fixing the Offender's Liability, 93 Yale L.J. 505, 508 n. 13 (1984).

connection with that conviction. In that case, the government insisted that the petitioner only could recover the fines in a separate action. In a brief opinion affirming the order of the district court directing the government to repay the fines, the court stated:

> We can see no reason why a person who has paid a fine pursuant to an unconstitutional statute should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled. Since the district court was empowered to set aside the conviction, it could also correct the unlawful result of the conviction and require the repayment of the money collected as fines. This it could do without requiring the bringing of another action.

*Lewis,* 478 F.2d at 836. This Court finds the reasoning of the court in *Lewis* unimpeachable.

As instructive as these cases might be, however, they both miss the mark in this case. In both *Herndon* and *Lewis,* a named governmental party held the prepaid criminal fines in dispute. In the Order dated September 6, 1990, this Court disposed of that issue by ordering the government to repay to Venneri the fine associated with the vacated conviction. This Court now must decide whether Marriott, a third party, can be made to repay its restitution. The cases cited by Venneri and Marriott provide little guidance on that issue, and this Court must look elsewhere.

Extraordinary cases call for extraordinary measures. The All Writs Act provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). Although § 1651(a) does not provide an independent basis for jurisdiction, the Act authorizes a federal court to issue orders "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. X (Sealed),* 601 F.Supp. 1039, 1042 (D.Md. 1984) (quoting *United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)).

The powers of the federal courts under the All Writs Act are not unlimited. Acknowledging that "the supplemental powers of the Act are not limited to situations where it is 'necessary' to issue the writ or order 'in the sense that the court could not otherwise physically discharge its appellate duties,' " *Pennsylvania Bureau of Correction v. United States Marshals Serv.,* 474 U.S. 34, 40, 106 S.Ct. 355, 360, 88 L.Ed.2d 189 (1985) (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942)), the Supreme Court hastened to point out:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Correction,* 474 U.S. at 43, 106 S.Ct. at 361. Consequently, before resorting to the authority of § 1651(a), a court must find that no statutory alternative exists for the same purpose.

In this case, no such alternative exists. Despite the abundance of statutory procedures and guidelines in existence to govern the process of convicting and sentencing a defendant, no thought appears to have been given to the possibility that, in an imperfect criminal justice system, some defendants might be convicted wrongly and some sentences might be overturned or vacated. Despite that dearth of statutory authority, it remains indisputable that Marriott must repay the petitioner. Venneri paid money to Marriott as a consequence of an unconstitutional conviction, and princi-

ples of justice require no less than a full refund of that money.

Courts in the past have used the All Writs Act to compel a third party to action. In *United States v. New York Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), the Court affirmed the application of the All Writs Act to an order directing the respondent telephone company to assist the FBI to install and use two "pen registers" pursuant to a valid warrant issued by the district court. The Second Circuit had reversed the order. Agreeing that "the power of the federal courts to impose duties on third parties is not without limits," the Court nevertheless reversed the decision of the Second Circuit, noting that the telephone company was not "a third party so far removed from the underlying controversy that its assistance could not be permissibly compelled."

Similarly, in this case, Marriott is closely connected with the underlying controversy and inseparably connected to the underlying award of restitution. In the absence of a statutory mechanism for restoring Venneri's restitution to him, this Court finds it necessary to resort to the residual authority of the All Writs Act to ensure that he receives it.